IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BARRY ARMBRISTER,<br><br>Defendant. | CR 07-30-H-CCL<br>CV 15-54-H-CCL<br><br>ORDER |

Before the Court is a Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 70) and brief in support (Doc. 71) filed by Defendant Barry Armbrister ("Petitioner").

**Factual Background**

In 2007, Petitioner was indicted by a grand jury and charged with Receipt and Possession of Child Pornography (Counts I and II), in violation of 18 U.S.C.

§§ 2252(a)(2). Petitioner pleaded guilty to these offenses, but prior to sentencing the Court granted the government's motion to dismiss the possession count. (Doc. 50) Petitioner was sentenced on September 23, 2008, to a term of imprisonment of 240 months, followed by a life term of supervised release. Petitioner's Offense Level was 34, Criminal History was IV, and Guideline Range was 210-262 months. (Doc. 54.) In 2009, Petitioner's conviction and sentence were affirmed on appeal. *United States v. Armbrister*, 343 Fed.Appx. 213 (9th Cir. 2009), *cert. denied*, 558 U.S. 1128 (2010).

**Section 2255 Standard**

A prisoner is entitled to relief under 28 U.S.C. § 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. . . ." 28 U.S.C. § 2255. However, it is the prisoner's burden to establish his claims, and the prisoner must "clear a significantly higher hurdle than would exist on direct appeal." *United*

*States v. Frady*, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

This motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. When this standard is met, a hearing is not necessary. *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985). Moreover, section 2255 relief provides an extraordinary remedy, *see United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), and it is the petitioner's duty to prove entitlement to it by a preponderance of the evidence, *see Farrow v. United States*, 580 F.2d 1339, 1355 (9th Cir. 1978).

A section 2255 motion is not appropriately used as a means "to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction." *United States v. Marchese*, 341 F.2d 782, 789 (9th Cir. 1965). Claims already addressed on direct appeal are not cognizable by means of section 2255 motions unless cause and prejudice or actual innocence can be

shown. *See United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985).

AEDPA's One-year Statute of Limitations.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one-year statute of limitations that begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). In this case, the Judgment of Conviction was filed on September 29, 2008. (Doc. 54.) The Ninth Circuit finalized the direct appeal, affirming Petitioner's conviction and sentence, by issuing its mandate on September 9, 2009. *United States v. Armbrister*, 343 Fed.Apx. 213 (2009). The Supreme Court denied Armbrister's petitioner for certiorari on January 11, 2010. *Armbrister v. United States*, 558 U.S. 1128, 130 S.Ct. 1095 (2010). The instant section 2255 motion was filed on June 10, 2015. (Doc. 70.)

Petitioner does not address the untimely nature of the instant section 2255 motion, except to claim that a recent Supreme Court decision, *Bond v. United States*, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014), is the basis of his late filing. Apparently Petitioner is relying on 28 U.S.C. § 2255(f)(3), which recognizes that

4

the 1-year limitations period restarts on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review...." 28 U.S.C. § 2255(f)(3) However, having examined the merits of this claim, the Court concludes that the *Bond* case does not set forth a right newly recognized and retroactively applicable to the instant case. Therefore, even if the motion were timely filed, it would still fail on the merits, as set forth below.

**Discussion**

<u>Grounds One and Two. Retroactive Application of New Rule.</u>

Petitioner asserts that his prosecution and conviction violate the Tenth Amendment and the Fifth Amendment (due process) because the United States did not have jurisdiction over his offense conduct. Armbrister challenges the constitutionality of 18 U.S.C. § 2252A(a)(2) because it allegedly violates basic principles of Federalism. In support of his contentions, Petitioner cites the case of *Bond v. United States*, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014) (*Bond II*). Petitioner claims that section 2252A usurps the powers reserved to the states by the Tenth Amendment. Petitioner argues that as long as state laws are adequate to address

5

his offense conduct, any attempt by Congress to criminalize his conduct violates the Tenth Amendment.

In *Bond v. United States*, the Supreme Court held that 18 U.S.C. 229(a)(1) could not be used to reach a purely local crime. That section of U.S. Code is part of the larger Chemical Weapons Convention Implementation Act of 1998 (the "Implementation Act"). Section 229(a)(1) criminalizes knowingly developing, producing, acquiring, transferring, receiving stockpiling, retaining, owning, possessing, using, or threatening to use any chemical weapon. 18 U.S.C. § 229(a)(1). The congressional purpose underlying this statute is that the Implementation Act itself was required to be passed by Congress so that the United States could fulfil its obligations under an international treaty, the Convention on the Prohibition of the Development, Production, Stockpiling, and Use of Chemical Weapons and on Their Destruction. S. Treaty Doc. No. 103-21, 1974 U.N.T.S. 331.

*Bond* was a federal criminal case. At issue was the conduct of a jilted wife who intentionally exposed her husband's pregnant lover to potassium dichromate and a substance containing arsenic, which chemicals the wife obtained by legal

6

means. The wife painted the substances on the other woman's door knob, mail box, and car door. The other woman suffered a minor burn on her thumb which was adequately treated by rinsing the thumb in water. The jilted wife was eventually charged under this federal chemical weapons statute and ultimately sentenced to 6 years in prison. On direct appeal, Bond challenged her conviction under the Tenth Amendment, arguing that this prosecution for such a purely local crime violated the principles of federalism and reservation of powers to the states as expressed by the Tenth Amendment. After Bond lost her first appeal to the Third Circuit, the Supreme Court ruled that Bond had standing to present a Tenth Amendment challenge to her conviction under section 229(a)(1). *Bond v. United States*, 564, 211, 131 S.Ct. 2355, 2367 180 L.Ed.2d 269 (2011) (*Bond I*).

Upon remand, and after the Third Circuit again held that Bond's conviction did not violate the Tenth Amendment, the case was again returned to the Supreme Court. In 2014, the Supreme Court agreed with Bond, finding that the Implementation Act was ambiguous in its scope, and that legislation affecting the federal-state balance requires a "'clear statement [that] assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in

the judicial decision.'" *Bond II*, at 2089 (quoting *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)). Noting that "[t]he notion that some things 'go without saying' applies to legislation just as it does to everyday life" *id.* at 2077, the Court held that the Implementation Act simply did not reach Bond's criminal conduct because "our constitutional structure leaves local criminal activity primarily to the States, [and the Court has] generally declined to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach." *Bond*, 134 S.Ct. at 2083.

The Court stated further that "[i]f section 229 reached Bond's conduct, it would mark a dramatic departure from that constitutional structure and a serious reallocation of criminal law enforcement authority between the Federal Government and the States. Absent a clear statement of that purpose, we will not presume Congress to have authorized such a stark intrusion into traditional state authority." *Id.* at 2093-94. By finding that the statute did not reach Bond's criminal conduct, the Court avoided deciding whether Congress had the constitutional authority under the Necessary and Proper Clause to execute the

government's power to make treaties by enacting section 229.

Significantly, in arguing the *Bond* case, the government relied *exclusively* upon congressional power derived from the Necessary and Proper Clause and explicitly disavowed reliance upon any constitutional authority derived from the Commerce Clause. *Bond*, 134 S.Ct. at 2087.

*Bond II* does not stand for the proposition cited by Petitioner. It does not invalidate prior cases upholding child-pornography statutes pursuant to congressional powers derived from the Commerce Clause. In *Wright v. United States*, 625 F.3d 583 (9th Cir. 2010), the Ninth Circuit noted that receipt of child pornography in interstate commerce did provide the necessary federal jurisdictional hook. Thus, section 2252A(a) was deemed to be a constitutionally sound exercise of congressional power under the Commerce Clause. However, in *Wright*, the undisputed evidence showed that the child pornography at issue never crossed state lines and moved only through purely intra-state communications. *Id.* at 594. At that time, and because the pre-2008 statute specified only that the material be mailed, shipped or transported "in interstate or foreign commerce," the

Ninth Circuit held that a plain reading of the "in interstate commerce" language of the statute required that the materials must cross state lines in order to satisfy the jurisdictional prerequisite. *Id.* at 595-97.

Since Petitioner's conviction, section 2252A has been significantly amended. Undoubtedly dissatisfied with the foregoing judicial interpretations of the statute, Congress amended it in 2008 by adding the phrases "using any means or facility of interstate or foreign commerce" and "or affecting interstate commerce" to clarify that no interstate movement of child pornography should be required for jurisdictional purposes. *Id.* at 599-600 (citing the "Effective Child Pornography Prosecution Act of 2007," enacted October 8, 2008, *see* Pub.L. No. 110-358, 122 Stat. 4001). This was based on a finding that "[t]he transmission of child pornography using the Internet constitutes transportation in interstate commerce." Pub.L. No. 110-358, § 102(7). The new amending language for section 2252A(a)(2) results in the statute now punishing "[a]ny person who knowingly receives or distributes any child pornography that has been mailed, or *using any means or facility of interstate or foreign commerce* shipped or

transported in *or affecting* interstate commerce or foreign commerce by any means, including by computer." Pub.L. No. 110-358, § 103 ("Clarifying ban on child pornography.") (emphasis added). In this fashion, Congress made explicit its intent to regulate purely intrastate transmissions of child pornography. *See Wright*, 625 F.3d at 600 ("[I]n 2007 Congress chose to regulate to the outer limits of its Commerce Clause authority by inserting the 'affecting interstate commerce' language.").

However, because the crime in *Wright* occurred before the 2008 amendment, evidence that the materials moved in interstate commerce would be necessary, or at a minimum, undisputed evidence that there was no movement across state lines would have been fatal. This was not in issue in Petitioner's case. Petitioner was in possession of 454 images and videos, many of which were well known to the government and obviously originated outside of Montana. There was absolutely no question about movement of the contraband materials across state lines in Petitioner's case. Therefore, there was never any argument or dispute over the Court's jurisdiction over Petitioner's prosecution, and there should be

none now.

Given this historical and factual context, this Court fails to see the merit to Petitioner's jurisdictional challenge or in his use of the recent *Bond II* decision. As a matter of fact and as a matter of law, Petitioner's offense conduct was not a local crime, and his crime was properly adjudicated under a federal law that provided this Court with adequate jurisdiction. The problem in the *Bond* case was that the prosecution of a jilted wife for her assault using legally-obtained chemicals of a single-use variety (as opposed to chemical weapons of mass destruction) was a matter never considered or even foreseen by Congress when it enacted the Implementation Act. To the contrary, in this case, Petitioner's receipt of child pornography images and videos transported via the Internet across state lines was *precisely* the conduct that Congress intended to punish when it enacted section 2252A(a)(2).

**Conclusion**

Thus, having considered the Petitioner's Motion, the Court's file, and all the record of this case, the Court has determined that the Petitioner is not entitled to

relief as to his section 2255 Motion to Vacate Sentence. Accordingly,

IT IS HEREBY ORDERED that Petitioner's Motion Pursuant to 28 U.S.C. § 2255 (Doc. 70) is DENIED.

A district court must issue a certificate of appealability when jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000). Finding that Petitioner Armbrister has failed to make a substantial showing of the denial of a constitutional right and that no jurist of reason would debate the correctness of denying Petitioner collateral relief,

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

The Clerk is directed forthwith to notify Petitioner Armbrister of the entry of this order.

Done and Dated this 22nd day of January, 2016.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE